**IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND**
**Civil Division**

**SEAN D. PALMER**
1314 Northeast 8th Street
Gainesville, Florida 32601

    and

**ALEXIS A. ZABSONRE**
1907 Moran Drive
Frederick, Maryland 21702

    and

**DANILO "ALBERTO" VASQUEZ-PEREZ**
7016 Flagstaff Street
Hyattsville, Maryland 20785

*Individually and as Representatives for*
*for All Others Similarly Situated*

                  **Plaintiffs**

v.

**RADNET, INC.**
1510 Cotner Avenue
Los Angeles, California 90025

    <u>Serve:</u>
    Howard G. Berger, MD
    1510 Cotner Avenue
    Los Angeles, California 90025

    Stephen M. Forthuber (President & COO)
    RadNet Eastern Operations
    7253 Ambassador Road
    Baltimore, Maryland 21244

    and

**RADNET MANAGED IMAGING SERVICES, INC.**
1516 Cotner Avenue
Los Angeles, California 90025

Case Number: *CAL22-03463*

*Serve:*
Howard G. Berger, MD
1516 Cotner Avenue
Los Angeles, California 90025

and

**RADNET SUB, INC.**
1510 Cotner Avenue
Los Angeles, California 90025

*Serve:*
Howard G. Berger, MD
1510 Cotner Avenue
Los Angeles, California 90025
and

**RADNET MANAGEMENT, INC.**
1510 Cotner Avenue
Los Angeles, California 90025

*Serve:*
Howard G. Berger, MD
1510 Cotner Avenue
Los Angeles, California 90025

and

**RADNET MANAGEMENT I, INC.**
1516 Cotner Avenue
Los Angeles, California 90025

*Serve:*
Howard G. Berger, MD
1516 Cotner Avenue
Los Angeles, California 90025

and

**RADNET MANAGEMENT II, INC.**
1516 Cotner Avenue
Los Angeles, California 90025

*Serve:*
Howard G. Berger, MD
1510 Cotner Avenue

2

Los Angeles, California 90025                    :
                                                 :
            and                                  :
                                                 :
                                                 :
**COMMUNITY RADIOLOGY ASSOCIATES, INC.** :
4110 Aspen Hill Road, Suite 200                  :
Rockville, Maryland 20853                        :
                                                 :
                                                 :
       *Serve:*                                  :
       Susan Kaltman                             :
       4110 Aspen Hill Road, Suite 200           :
       Rockville, Maryland 20853                 :
                                                 :
            and                                  :
                                                 :
**COMMUNITY IMAGING PARTNERS, INC.**             :
4110 Aspen Hill Road, Suite 200                  :
Rockville, Maryland 20853                        :
                                                 :
       *Serve:*                                  :
       CSC-Lawyers Incorporating Service Co.     :
       7 St. Paul Street, Suite 820              :
       Baltimore, Maryland 21202                 :
                                                 :
            and                                  :
                                                 :
**OMNI HEALTHCARE FINANCIAL, LLC**               :
**(f/d/b/a GLOBAL FINANCIAL CREDIT, LLC)**       :
16905 Northcross Drive, Suite 300                :
Huntersville, North Carolina 28078               :
                                                 :
       *Serve:*                                  :
       William P. Bray                           :
       Bray & Long, PLLC                         :
       2820 Selwyn Avenue, Suite 400             :
       Charlotte, North Carolina 28209           :
                                                 :
                           Defendants            :
                                                 :

## CLASS ACTION COMPLAINT

Plaintiffs, Sean D. Palmer, Alexis Zabsonre, and Danilo A. Vasquez-Perez, by

and through undersigned counsel, pursuant to Maryland Rule 2-231, and *on behalf of*

*themselves and as representative for all others similarly situated*, hereby file suit against

Defendants, RadNet, Inc., RadNet Managed Imaging Services, Inc., RadNet Sub, Inc.,

RadNet Management, Inc., RadNet Management I, Inc., RadNet Management II, Inc.,

Community Radiology Associates, Inc., Community Imaging Partners, Inc., and OMNI

Healthcare Financial, LLC (f/d/b/a Global Financial Credit, LLC), and as grounds

therefor allege as follows:

## Parties

1.     Plaintiff, Sean D. Palmer ("Plaintiff Palmer"), is an adult resident of

Alachua County, Florida, residing at the above-captioned address.  At the time that

Plaintiff Palmer entered into the loan agreements at issue in this lawsuit, he resided at

1115 Palmer Road, Apt. 1, Fort Washington, Maryland 20744.

2.     Plaintiff, Alexis A. Zabsonre ("Plaintiff Zabsonre"), is an adult resident of

Frederick County, Maryland, residing at the above-captioned address.

3.     Plaintiff, Danilo "Alberto" Vasquez-Perez ("Plaintiff Vasquez"), is an adult

resident of Prince George's County, Maryland, residing at the above-captioned address.

4.     Upon information and belief, Defendant RadNet, Inc. ("Defendant

RadNet"), is a Delaware corporation headquartered in California, which regularly

conducts business in the State of Maryland.  Its resident agent is Howard G. Berger,

MD, 1516 Cotner Avenue, Los Angeles, California 90025.

5.     Upon information and belief, Defendants RadNet Managed Imaging

Services, Inc., RadNet Sub, Inc., RadNet Management, Inc., RadNet Management I,

Inc., and RadNet Management II, Inc., (collectively, "RadNet Management") are

California corporations headquartered in California, which regularly conduct business in

4

the State of Maryland.   Their resident agent is Howard G. Berger, MD, 1510/1516
Cotner Avenue, Los Angeles, California 90025.

6.      Upon information and belief, Defendant Community Radiology Associates,
Inc. ("Defendant CRA"), is a Maryland corporation headquartered in Maryland, which
regularly conducts business in the State of Maryland.   Its resident agent is Susan
Kaltman, 4110 Aspen Hill Road, Suite 200, Rockville, Maryland 20853.

7.      Upon information and belief, Defendant Community Imaging Partners, Inc.
("Defendant CIP"), is a Delaware corporation headquartered in Maryland, which
regularly conducts business in the State of Maryland.   Its resident agent is CSC-
Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore,
Maryland 21202.

8.      Upon information and belief, Defendant OMNI Healthcare Financial, LLC
(f/d/b/a Global Financial Credit, LLC) ("Defendant OMNI"), is a Delaware corporation
headquartered in North Carolina, which regularly conducts business in the State of
Maryland.  Its resident agent is William P. Bray, Bray & Long, PLLC, 2820 Selwyn
Avenue, Suite 400, Charlotte, North Carolina 28209.

## Jurisdiction & Venue

9.      This Court has subject matter jurisdiction over this suit pursuant to Md.
Code, Courts & Judicial Proceedings § 4-401(d)(1)(ii), as the aggregated claims of the
Plaintiff class exceed $30,000.00.

10.     This Court has personal jurisdiction over all Defendants pursuant to Md.
Code, Courts & Judicial Proceedings § 6-103, as all causes of action alleged herein
arose from Defendants' tortious conduct in the State of Maryland.

11.    In addition, this Court has personal jurisdiction over Defendants CRA and CIP pursuant to Md. Code, Courts & Judicial Proceedings § 6-102, as both Defendants are headquartered in Maryland, and Defendant CRA is a Maryland corporation.

12.    Venue is proper in this Court because Defendants regularly conduct business in Prince George's County, and the majority of Defendants' actions at issue in this suit occurred in Prince George's County.  Specifically, three of the four medical facilities where Plaintiffs underwent medical diagnostic imaging procedures were located in Prince George's County, and three of the four letters of protection/medical lien agreements were signed in Prince George's County.

### Statute of Limitations

13.    Pursuant to Md. Code, Courts & Judicial Proceedings § 5-101, "[a] civil action shall be filed within three years from the date it *accrues* unless another provision of the Code provides a different period of time within which an action shall be commenced."  (Emphasis added.)

14.    Under the "discovery rule," a cause of action "accrues" on the date when the plaintiff knew, or with due diligence reasonably should have known, of the wrong. *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 689 A.2d 634 (1997).

15.    Md. Code, Courts & Judicial Proceedings § 5-203 provides that "[i]f the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of reasonable care should have discovered the fraud."

16.     The Court of Appeals of Maryland, by Administrative Orders issued during

the COVID-19 pandemic, tolled Maryland's statute of limitations from 03/16/20–

07/20/20, and then by an additional 15 days (for a total of 142 days).[1]

### Class Action Allegations

17.     Plaintiffs assert claims on behalf of all other similarly situated ("the

Putative Class"), defined as follows:

> "All Maryland residents who entered into loan agreements (Letters of
> Protection, Medical Liens, or similar loan agreements of whatever title)
> with Global Financial Credit, LLC (d/b/a MedChex) and/or OMNI
> Healthcare Financial, LLC in connection with the payment of medical
> treatment or procedures from 02/11/2010 – Present."[2]

18.     Plaintiffs incorporate by reference their "Motion for Class Certification,"

filed in conjunction with this Complaint.

19.     For the reasons set forth in Plaintiffs' Motion for Class Certification,

Plaintiffs request that this Court certify the above-defined Class and appoint the

undersigned as Class Counsel.

### Overview of Action

20.     This is a case about a scheme to make illegal and usurious loans—with

interest rates at least as high as 485%—to vulnerable people.

---

[1]   The Court's 04/03/20 "Administrative Order on Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters" tolled the statute of limitations effective 03/16/20 "by the number of days that the courts are closed to the public due to the COVID-19 emergency." The Court's 06/03/20 "Second Revised Administrative Order on the Emergency Tolling or Suspension of Statutes of Limitations and Statutory and Rules Deadlines Related to the Initiation of Matters and Certain Statutory and Rules Deadlines in Pending Matters" defined "tolled or suspended by the number of days that the courts were closed" as "the days that the *offices of the clerks of court* were closed to the public (from March 16, 2020 through July 20, 2020)..." (emphasis added.) The order further provided that, "[w]ith the offices of the clerks of courts to be reopened to the public on July 20, 2020, the filing deadlines to initiate matters are hereby extended an additional 15 days."

[2]   Plaintiffs are requesting that the Putative Class include individuals impacted by Defendants' lending practices going back to 02/11/10 because the statute of limitations applicable to Count V of this Complaint is twelve (12) years. *See* ¶¶ 150–158, below.

21.     Upon information and belief, Defendants RadNet, RadNet Management, CRA, and CIP (collectively, "Defendant Radiology Providers") are the owners and/or operators of medical diagnostic imaging centers throughout the State of Maryland, including, but not limited to, Clinton Imaging Center, Greenbelt Imaging Center, and Frederick Imaging Center.

22.     Upon information and belief, Defendants CRA and CIP are divisions or wholly owned subsidiaries of Defendants RadNet and RadNet Management.

23.     Upon information and belief, Defendant OMNI is a finance company that provides "medical lien management" services[3] to personal injury plaintiffs (i.e., medical treatment financing for indigent persons who typically do not have health insurance.)

24.     Defendant OMNI has repeatedly and knowingly contracted for, charged, demanded, collected, and/or accepted rates of interest *far* in excess of Maryland's interest-rate caps.

25.     Defendant OMNI induced Plaintiffs to sign the Medical Lien through fraud and deceit, and through concealment and non-disclosure notwithstanding a duty to disclose under existing Maryland law.

26.     Defendants Radiology Providers provided Plaintiffs with the Medical Lien and/or informed Plaintiffs orally, prior to Plaintiffs signing the Medical Lien, that the effect of the agreement was simply to delay payment for their medical procedure until after the settlement of their personal injury claim.

27.     Defendants Radiology Providers, in exchange for arranging said loans (by directing Plaintiffs (potential lendees) to Defendant OMNI and inducing Plaintiffs to sign

---

[3]  *See* Defendant OMNI's website at: https://omni-healthcare.com.  (Accessed 02/03/22)

the Medical Lien), have profited in the form of balance billing, kickbacks, and/or other remunerative arrangements.

28.     Defendants have thus engaged in conspiracy to circumvent Maryland's usury/consumer protection laws and have for years fraudulently siphoned hundreds of thousands of dollars (if not more) from Maryland residents.

29.     Counts I, II, and III allege violations of Maryland's Usury Statute, codified at Md. Code, Commercial Law § 12-101, *et seq.*, for which Plaintiffs seek statutory, declaratory, and injunctive relief.

30.     Count IV and V allege violations of Maryland's Consumer Loan Law ("MCLL"), codified at Md. Code, Commercial Law § 12-301, *et seq.*, for which Plaintiffs seek declaratory and injunctive relief.

31.     Count VI alleges violations of Maryland's Consumer Protection Act ("MCPA"), codified at Md. Code, Commercial Law § 13-101, *et seq.*, for which Plaintiffs seek compensatory damages.

32.     Count VII alleges Unjust Enrichment, for which Plaintiffs seek restitution.

33.     Count VIII alleges Intentional Misrepresentation in the form of fraud, deceit, concealment, and non-disclosure, for which Plaintiffs seek compensatory damages.

34.     Count IX alleges Misrepresentation in the form of Constructive Fraud, for which Plaintiffs seek compensatory and punitive damages.

35.     Count X alleges Civil Conspiracy, for which Plaintiffs seek compensatory and punitive damages.

9

## **Factual Background**

### I. Plaintiff Palmer

36.    Plaintiff Palmer was involved in a motor vehicle collision on 04/15/18.

37.    Plaintiff Palmer suffered multiple injuries in the collision, including, but not limited to injuries to his left hip.

38.    The undersigned attorneys' law firm represented Plaintiff Palmer in connection with that collision.

39.    On 04/19/18, Dr. K. Thomas Wagner, Jr., an orthopedist at Phillips & Green, MD, LP, examined Plaintiff Palmer and referred him for a CT scan of his left hip.

40.    The CT scan was scheduled for 05/02/18 at Clinton Imaging Center, a medical diagnostic imaging center located in Prince George's County, Maryland, which is owned and operated by Defendant Radiology Providers.

41.    On 04/27/18, the undersigned law firm received a fax from "MedChex," a company which was then a subsidiary of Global Financial Credit, LLC (now Defendant OMNI). **(Exhibit 1** at 001–002.)

42.    The fax included a cover page, which stated that "[t]he above-mentioned patient [Plaintiff Palmer] would like to be admitted to [sic] for an MRI or other diagnostic testing. In order to approve your client on a lien basis please sign the attached Letter of Protection and complete the questions below." (Id. at 001.)

43.    Attached to the fax cover page was a "MedChex Universal Letter of Protection" (hereinafter, "LOP"). (Id. at 002.) The LOP, which was drafted by MedChex, provided as follows (emphasis added):

10

Dear MedChex,

"Please be advised that our firm represents personal injury and/or workers' compensation clients that require medical services. This letter shall serve as notice that we will protect **your medical bill** as they [sic] relate to our client's legal claims by remitting payment from the settlement proceeds.

"We require that you contact our office prior to providing medical services to our clients so that we may determine if your medical services would relate to the client's claim. If we determine that your services do relate to the client's legal claim, then this letter will apply to the related bills only. *We also require that you promptly provide medical reports and bills for services rendered.*

"Upon settlement and distribution of proceeds from the legal claim relating to MedChex's bill, I will contact MedChex to satisfy the lien. If I no longer represent the client/patient than [sic] I will provide any and all applicable insurance carrier and/or subsequent attorney information to a MedChex representative without delay. This Universal Letter of Protection must be renewed annually."

44. The LOP did not specify the amount of the original medical bill (i.e., a

"principal" amount), the total amount to be claimed by MedChex as a "lien," or the

applicable interest rate. It only included a promise to "protect your [MedChex's] *medical*

*bill*." (Emphasis added.)

45. Upon information and belief, Simba Hodari, Esq., an attorney at the

undersigned attorneys' law firm, never returned a signed copy of the LOP to MedChex.

46. Also included in that fax was a similar document drafted by MedChex,

titled "Medical Lien/Letter of Protection" ("Medical Lien"). *Id.* at 003. The Medical Lien

provided as follows:

"I, Sean Palmer, authorize and direct the below named attorney to pay MedChex the agreed amount out of my/our share of any collection made on our behalf against any party liable for the injuries requiring medical treatment by Clinton

11

Imaging Center. Should the below named attorney not
agree to signing this letter of protection, MedChex may
revoke this letter of protection by providing written notice to
both the attorney and patient and MedChex may then
actively pursue collection of the account or accounts in its
normal manner. I hereby authorize and direct my attorney to
cooperate with MedChex when/if they inquire concerning the
status of any claim or suit on my/our behalf, and such advice
shall be for my account and without charge or cost to
MedChex."

Sean Palmer

Dear Simba Hodari,

"Your client referenced above has been or will be seen at
Clinton Imaging Center for diagnostic testing related to
injuries sustained in a personal injury accident. It is our
understanding that you represent this patient in a personal
injury claim and that our *medical bill/lien* will be satisfied if
there is successful resolution to the claim. Upon settlement
or verdict and distribution of proceeds from the claim, please
mail payment to the MedChex billing center below.

...

"I, Simba Hodari, acknowledge this medical lien on the legal
claim proceeds of the above mentioned [sic] patient. Upon
settlement and distribution of proceeds from the legal claim, I
will contact MedChex to satisfy the lien. If I no longer
represent the patient/client, I will provide any and all
applicable insurance carrier and/or subsequent attorney
information to a MedChex representative so they may assert
their lien on the claim.

Simba Hodari, Esq."

47. Like the LOP, the language of the Medical Lien was vague in that it did not

specify the amount of the original medical bill (i.e., the "principal" amount), the total

12

amount to be claimed by MedChex as a "lien," or the applicable interest rate. It only included a promise to pay the "*medical bill/lien*." (Emphasis added.)

48.     On 05/02/18, Plaintiff Palmer underwent a CT scan of his left hip at Clinton Imaging Center. (*Id.* at 004.)

49.     On 09/24/18, the undersigned attorneys' law firm received a medical bill from Defendant CRA, which showed a **$350.00** charge for the 05/02/18 CT scan. (*Id.* at 006.) The bill included a "Payment Information" section near the bottom, which provided: "Insurance Payment (92114 – MedChex LLC): 05/23/18 of $350.00." (*Id.*)[4]

50.     On 09/27/18, the undersigned attorneys' law firm received a "Health Insurance Claim Form," indicating a balance due to MedChex of **$1,695.00** for the 05/02/18 CT scan. (*Id.* at 006.)

51.     The repayment amount demanded by Defendant OMNI represented a **485%** markup of the amount originally charged for the CT scan.

52.     The undersigned attorneys' firm never had actual or constructive knowledge of Defendants' fraudulent, abusive, and exorbitant billing/lending practices until late September 2018 at the absolute earliest, as that is when they had both the CRA bill and MedChex bill in their possession.

53.     Later in 2018, employees at the undersigned attorneys' law firm (believing that there had been a mistake) called MedChex to confirm the balance due.

54.     MedChex advised that there had been no mistake, and that the full balance of $1,695.00 was due.

---

[4] The undersigned attorneys believe that the bill from CRA, which reflects a total charge of $350.00 for the CT scan, was sent to the undersigned attorneys' law firm in error, and that Defendants only intended to send the $1,695.00 bill from Defendant OMNI. Interestingly, the undersigned attorneys' law firm did not receive a bill from Defendant CRA for treatment rendered to either of the other two Plaintiffs (Zabsonre or Vasquez) included in the proposed Plaintiff class. Plaintiffs Zabsonre and Vasquez only received bills from MedChex directly—never from Defendant CRA.

55.     The undersigned attorneys' law firm has continued to receive calls, emails, and letters concerning the outstanding balance up through the present. (*Id.* at 007–009.)

*II. Plaintiff Zabsonre*

A. Treatment and Medical Lien

56.     Plaintiff Zabsonre was involved in a motor vehicle collision on 04/03/18.

57.     Plaintiff Zabsonre suffered multiple injuries in the collision, including, but not limited to injuries to his lower back.

58.     The undersigned attorneys' law firm represented Plaintiff Zabsonre in connection with that collision.

59.     On 06/13/18, Dr. Timothy S. Yoon, an orthopedist at Premier Orthopedics, PA, examined Plaintiff Zabsonre and referred him for a lumbar MRI.

60.     The MRI was scheduled for 06/21/18 at Frederick Imaging Center, a medical diagnostic imaging center located in Frederick County, Maryland, which is owned and operated by Defendant Radiology Providers.

61.     On 06/18/18, the undersigned attorneys' law firm received a fax from Defendant OMNI. (**Exhibit 2** at 001–002.)

62.     The fax included a cover page, which stated that "[t]he above-mentioned patient [Plaintiff Zabsonre] would like to be admitted to [sic] for an MRI or other diagnostic testing. In order to approve your client on a lien basis please sign the attached Letter of Protection and complete the questions below." (*Id.* at 001.)

63.     Included with the cover page was the boilerplate "Medical Lien" document. (*Id.* at 002.) The language of the Medical Lien was the same in all material respects as

14

the one previously sent to the undersigned attorneys' law firm in connection with their representation of Plaintiff Palmer.[5] (*See* ¶ 46, above, for language.)

64.     Mr. Hodari signed the Medical Lien.

65.     On 06/19/18, the undersigned attorneys' law firm received another fax from Defendant OMNI, which was a duplicate of the 06/18/18 fax. (*Id.* at 003–004.)

66.     On 06/21/18, Plaintiff Zabsonre underwent an MRI of his lumbar spine at Frederick Imaging Center. (*Id.* at 005–006.)

67.     Later in 2018, the undersigned attorneys' law firm received a "Health Insurance Claim Form," indicating a balance due to MedChex of *$1,895.00* for the 06/21/18 MRI. (*Id.* at 007.)

68.     However, the undersigned attorneys did not have a CRA bill to compare the Health Insurance Claim Form to (meaning they could not compare MedChex's claimed lien of $1,895.00 to the amount actually billed by CRA).

69.     However, the undersigned attorneys were aware—by virtue of the exorbitant lien MedChex claimed in Plaintiff Palmer's case—of MedChex's potential for abusive billing practices.

        B. <u>Collateral Litigation Related to Defendants' Billing/Financing Practices</u>

70.     On 01/31/19, Plaintiff Zabsonre filed a personal injury action in the Circuit Court for Frederick County, Maryland in connection with her 04/03/18 motor vehicle collision: *Alexis Zabsonre v. Daniel Cochran* (Case Number C-10-CV-19-000084).

**(Exhibit 3** – Docket Report.)

---

[5]  The only differences between the 06/18/18 Medical Lien sent for Plaintiff Zabsonre and the 04/27/18 Medical Lien sent for Plaintiff Palmer were the date, MedChex reference number, and patient name.  The agreements were otherwise identical.  Like the Medical Lien sent to Plaintiff Palmer, no price term was contained in the copy sent to the undersigned attorneys' firm, and the undersigned's firm only agreed to satisfy MedChex's "medical bill/lien."

71. Because of the undersigned attorneys' knowledge of MedChex's excessive lien in Plaintiff Palmer's case, the undersigned attorneys suspected that the same might be true in Plaintiff Zabsonre's case.

72. Thus, the undersigned attorneys were concerned that they would run afoul of the ethical rules if they represented to the jury at the trial of Plaintiff Zabsonre's case that the amount charged by MedChex for the MRI was "fair and reasonable." The Rules of Professional Conduct prohibit attorneys from making such a misrepresentation to the trier of fact.

73. On 04/18/19, Plaintiff Zabsonre issued a subpoena *duces tecum* on Non-Party CRA, seeking documents to shed light on what appeared to be flagrantly abusive billing/lending practices. (**Exhibit 4** at 001–002.)

74. The subpoena's return date was 05/24/19. (*Id.* at 001.)

75. Plaintiff Zabsonre served Non-Party CRA with the subpoena on 04/22/19. (*Id.* at 003.)

76. Non-Party CRA never responded to the subpoena.

77. On 07/02/19, the undersigned attorneys contacted Suzanne L. Rotbert, Esq. (then CRA's resident agent) to discuss CRA's failure to respond to the subpoena. Ms. Rotbert told the undersigned attorneys that she would "contact the appropriate people to cure the error."

78. On 07/02/19, the undersigned attorneys received an email from Julia Tascione, an employee of Defendant OMNI (then Global Financial Credit, LLC d/b/a MedChex). Ms. Tascione's email attached some documents responsive to the subpoena, but she failed to produce: (a) all records regarding payments made to

16

Plaintiff Zabsonre's account; (b) any and all correspondence generated by or received by Plaintiff Zabsonre; and (c) any and all documents describing or concerning the relationship between Defendant CRA and Defendant OMNI (then Global Financial Credit, LLC d/b/a MedChex). **(Exhibit 5** at 001.)

79. Interestingly, Ms. Tascione's response included a signed affidavit stating that she was the custodian of records for CRA. (*Id.* at 002.)

80. On 07/25/19, the undersigned attorneys filed a motion to compel against Non-Party CRA for its failure to fully comply with the subpoena. (Exhibit 3.)

81. On 08/14/19, the Circuit Court for Frederick County issued an Order granting Plaintiff's Motion to Compel and ordering that "CRA shall completely and fully respond to Plaintiff's subpoena within seven (7) days of this Order." (*Id.*)

82. On 08/19/19, the undersigned attorneys contacted Ms. Rotbert to alert her to the court's 08/14/19 Order compelling Non-Party CRA's compliance with the subpoena. Ms. Rotbert stated that she would "contact the appropriate people regarding the Order."

83. On 09/16/19, Plaintiff filed Motion for Sanctions against Non-Party CRA for its failure to respond to the 04/18/19 subpoena despite the court's 08/14/19 Order compelling it to do so. (*Id.*)

84. On 10/07/19, the court issued an Order granting Plaintiff's Motion for Sanctions against Non-Party CRA and ordering CRA to "completely and fully respond to Plaintiff's allegations with [an] Answer filed [by] 10/25/19." (*Id.*)

85. On 11/13/19, Plaintiff issued a subpoena to Ms. Rotbert to compel her appearance at a status hearing on 11/20/19.

17

86.    Ms. Rotbert failed to appear at the status hearing.

87.    On 11/27/19, the court issued Show Cause Order regarding Ms. Rotbert's failure to appear at the Status Hearing notwithstanding being served with a subpoena compelling her appearance.  (*Id.*)

88.    On 12/12/19, the court held a second status hearing.  (*Id.*)  Ms. Rotbert appeared at the hearing with counsel and advised that the proper target for a subpoena to CRA was its parent company, RadNet, Inc.

89.    On 01/30/20, Plaintiff issued a subpoena for Deposition *Duces Tecum* of Non-Party RadNet, Inc.'s corporate representative (a Maryland Rule 2-412(d) deposition).  The deposition was scheduled to take place on 03/06/20.  (**Exhibit 6** at 001–007.)

90.    On 01/31/20, Plaintiff served the subpoena on Stephen M. Forthuber (President & COO of Non-Party RadNet's Eastern Operations division).  (*Id.* at 008.)

91.    Non-Party RadNet failed to appear at the 03/06/20 deposition.

92.    On 03/16/20, Plaintiff filed a Motion for Sanctions against Non-Parties RadNet and CRA for their failure to produce records and appear at depositions despite multiple court orders compelling them to do so. (Exhibit 3.)

93.    On 04/14/20, the court issued an Order to Show Cause against Defendants RadNet and CRA, which required them to appear before the court on 06/05/20 and to show cause why: (a) any debt asserted by RadNet/CRA relating to Plaintiff should not be deemed null and void; (b) RadNet/CRA should not be estopped and enjoined from any collection efforts related to the debt; and (c) RadNet/CRA should not pay Plaintiff's attorney's fees and costs.  (*Id.*)

18

94.    On 08/20/20, Bradford J. Roegge, Esq. and Andrew R. Booth, Esq. of Gleason, Flynn, Emig & McAfee, Chtd. entered their appearance on behalf of RadNet/ CRA. (*Id.*)

95.    On 08/21/20, the court held a status conference, during which RadNet/CRA's counsel requested leave to file a memorandum in response to the prior subpoenas, orders to compel, and orders for sanctions. (*Id.*)

96.    On 09/04/20, RadNet/CRA filed a "Memorandum Regarding the Subpoena for Records and Motion for Reconsideration," in which they asked the Court to revisit its prior orders of 08/14/19 (Order to compel), 10/07/19 (Order for sanctions), 03/16/20 (Order for sanctions), and 04/14/20 (Order to show cause). (*Id.*) In their Memo/Motion, Non-Parties RadNet/CRA asked the court to revise its prior orders because: (a) RadNet/CRA's litigation counsel was never informed of the proceedings; (b) Plaintiff's motions (and thus all derivative orders) were moot because RadNet/CRA had already produced all responsive documents; and (3) any documents not yet produced were irrelevant to Plaintiff's lawsuit.

97.    On 09/14/20, Plaintiff filed a vigorous "Opposition to RadNet, Inc. and Community Radiology Associates, Inc.'s Motion for Reconsideration." (*Id.*)

98.    On 09/18/20, Non-Parties RadNet and CRA filed their "Reply in Support of Motion for Reconsideration." (*Id.*)

99.    On 10/19/20, the court issued an Order denying Non-Parties RadNet/CRA's motion to reconsider the 08/14/19, 10/07/19, and 03/16/20 orders, but denying the relief previously requested by Plaintiff as outlined in the court's 04/14/20

Show-Cause Order, on the ground that Non-Parties RadNet/CRA had "fully satisfied the April 14, 2020 Show-Cause Order." (*Id.*)

100.    After more than 18 months of collateral litigation—during which time RadNet/CRA flouted the power of the Circuit Court for Frederick County by openly spurning order after order—RadNet/CRA escaped without producing the responsive documents to the undersigned attorneys.

### III.   Plaintiff Vasquez

101.    Plaintiff Vasquez was involved in a motor vehicle collision on 05/03/19.

102.    Plaintiff Vasquez suffered multiple injuries in the collision, including, but not limited to, injuries to his head causing headaches and rhinorrhea.

103.    The undersigned attorneys' law firm represented Plaintiff Vasquez in connection with that collision.

104.    On 06/04/19, Dr. Mohammad Beiraghdar, a Silver Spring-based neurologist, examined Plaintiff Vasquez and referred him for an MRI of the head/brain.

105.    The MRI was scheduled for 06/18/19 at Greenbelt MRI, a medical diagnostic imaging center located in Prince George's County, Maryland, which is owned and operated by Defendant Radiology Providers.

106.    Upon information and belief, Plaintiff Vasquez and an attorney at the undersigned law firm signed a "Medical Lien" similar to the one had been signed for treatment rendered to Plaintiff Palmer and Plaintiff Zabsonre, as previously described herein. (*See* ¶ 46, above, for language.)

107.    As was the case with the Medical Liens previously signed on behalf of Plaintiffs Palmer and Zabsonre, neither Plaintiff Vasquez nor attorneys at the

20

undersigned law firm had knowledge, at the time of signing the Medical Lien, of the stark disparity between the amount that CRA billed and the amount MedChex would claim as a lien.

108.   On 06/18/19, Plaintiff Vasquez underwent an MRI of his head/brain at Greenbelt Imaging Center. **(Exhibit 7** at 001.)

109.   Subsequent to Plaintiff Vasquez's MRI, the undersigned attorneys received a "Health Insurance Claim Form," indicating a balance due to MedChex of **$1,895.00** for the 06/18/19 MRI. (*Id.* at 002.)

110.   Defendant OMNI continues its efforts to collect the balance of its "lien" to this day. (*Id.* at 003.)

### IV. Other Potential Plaintiffs

111.   Plaintiffs are aware of at least one other individual who has fell victim to Defendants' scheme. (*See* **Exhibit 8.**)

112.   This individual underwent two x-rays at Clinton Imaging Center in Prince George's County. (*Id.*)

113.   His Medical Lien was signed in Prince George's County.

### Count I: Violation of Maryland Usury Statute
### (Usurious Loan — Statutory Damages)
### (Plaintiff v. All Defendants)

114.   Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully re-alleged herein, and further allege as follows:

115.   The Maryland Usury Statute, codified at Md. Code, Commercial Law § 12-101, *et seq.*, prohibits usurious lending.

21

116.    The Usury Statute provides a private cause of action. Md. Code,
Commercial Law § 12-111(b).

117.    The Usury Statute sets a general ceiling of 6 percent per annum for
interest to be paid on a loan. Md. Code, Commercial Law § 12-102.[6]

118.    The Usury Statute includes certain exceptions to this general rule, none of
which apply to the instant case. See Md. Code, Commercial Law § 12-103.[7]

119.    The Usury Statute defines "interest" broadly, to mean "any compensation
directly or indirectly imposed by a lender for the extension of credit . . . including any
loan fee, origination fee, [or] service and carrying charge . . ." Md. Code, Commercial
Law § 12-101(e).

120.    The Usury Statute provides that, "[a]ny person who violates the usury
provisions of this subtitle shall forfeit to the borrower the greater of: (i) Three times the
amount of interest and charges collected in excess of the interest and charges
authorized by this subtitle; or (ii) The sum of $500.00." Md. Code, Commercial Law §
12-114(b)(1).

121.    Defendants have violated Maryland's Usury Statute by charging Plaintiffs,
and members of the putative Class, rates of interest far in excess of Maryland's
statutory ceiling of 6 percent per annum.

---

[6] Md. Code, Commercial Law § 12-102 provides: "*General legal rate of interest.* Except as otherwise provided by law, a person may not **charge** interest in excess of an effective rate of simple interest of 6 percent per annum on the unpaid principal balance of a loan." (Emphasis added.)

[7] For example, Md. Code, Commercial Law § 12-103(a), which governs "Loan[s] under written agreement[s]," permits lenders to charge a higher percentage per year (8%-24%), but only "if there is a written agreement signed by the borrower *which sets forth the stated rate of interest charged by the lender.*" (Emphasis added.) Defendants are unable to avail themselves of the § 12-103(c) exception for the same reason. The other exceptions included in § 12-103—(b) ("Loans secured by residential property"), (d) ("Loan guaranteed by federal agency"), (e) ("Commercial and corporate loans"), and (f) ("Loans secured by investment securities")—are wholly inapplicable.

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative

Class, hereby demand judgment against Defendants, jointly and severally, for: (a)

statutory damages in accordance with Md. Code, Commercial Law § 12-114(b)(1); (b)

recovery of costs; (c) reasonable attorney's fees; (d) interest; and (e) such further relief

as this Court deems necessary or appropriate.

### **Count II: Violation of Maryland Usury Statute**
### **(Usurious Loan — Declaratory Judgment/Injunctive Relief)**
### **(Plaintiff v. All Defendants)**

122.    Plaintiffs incorporate by reference the preceding paragraphs, in the same

force and effect as if fully realleged herein, and further allege as follows:

123.    Maryland's Usury Statute defines a "covered loan" as "a loan subject to §

12-103(a)(3) or (c)"[8] and "which is made for personal, family, or household purposes,

regardless of whether the loan is or purports to be made under this subtitle." Md. Code,

Commercial Law § 12-114.1(a)(2)(i).

124.    Defendants' loans to Plaintiffs and members of the Putative Class were

"covered loans" within the meaning of Maryland's Usury Statute.

125.    Maryland's Usury Statute provides that ". . . a covered loan is void and

unenforceable if a person contracts for a covered loan that has a rate of interest,

charge, discount, or other consideration greater than the amount authorized under State

law." Md. Code, Commercial Law § 12-114.1(d)(2)(i) (emphasis added.)

---

[8] Md. Code, Commercial Law § 12-103(a)(3) applies to loans made "under written agreement" and either "secured by the pledge of collateral which is other than a savings account" or unsecured." § 12-103(c) applies to "loans not secured by residential real property."

23

126.    If a loan is "void or unenforceable," then "a person may not: (i) [c]ollect or attempt to collect, directly or indirectly, any amount from the borrower; (ii) [e]nforce or attempt to enforce the contract against any property securing the loan; or (iii) [s]ell, assign, or otherwise transfer the loan to another person." Md. Code, Commercial Law § 12-114.1(d)(4).

127.    Defendants have violated Maryland's Usury Statute by charging Plaintiffs, and members of the Putative Class, rates of interest far in excess of the amount authorized under State law for covered loans.

128.    Defendants' loans to Plaintiffs and members of the Putative Class are therefore void and unenforceable.

### *Prayer for Relief*

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby request a declaratory judgment that: (a) the subject loans were made in violation of Md. Code, Commercial Law § 12-114.1; (b) the subject loans are void and unenforceable pursuant to Commercial Law § 12-114.1(d)(2); (c) Defendants are enjoined from collecting or attempting to collect on the subject loans, in accordance with Md. Code, Commercial Law § 12-114.1(d)(4)(i); (d) Defendants are enjoined from enforcing or attempting to enforce the subject contracts against any property securing the subject loans, in accordance with Md. Code, Commercia Law § 12-114.1(d)(4)(ii); and (e) all past payments (whether principal, interest, charges, fees, or other compensation) made by Plaintiffs and members of the Putative Class, constituted unjust enrichment for which Plaintiffs and the Putative Class are entitled to restitution from Defendants, as pleaded in Count VII, below.

24

## *Count III: Violation of Maryland Usury Statute*
## (Unlicensed Lender — Declaratory Judgment/Injunctive Relief)
## (Plaintiff v. All Defendants)

129.   Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully realleged herein, and further allege as follows:

130.   Maryland's Usury Statute defines a "*covered loan*" in the manner previously described in ¶ 121, above. Md. Code, Commercial Law 12-114.1(a)(2)(i).

131.   Defendants' loans to Plaintiffs and members of the Putative Class were "covered loans" within the meaning of Maryland's Usury Statute.

132.   Maryland's Usury Statute provides that a "covered loan" made by an "*unlicensed person*" is void and unenforceable. Md. Code, Commercial Law § 12-114.1(d)(1) (emphasis added.)

133.   Maryland's Usury Statute defines an "unlicensed person" as "a person who is not: (i) licensed in the State to make a covered loan; and (ii) exempt from licensing in the State." Md. Code, Commercial Law § 12-114.1(3).

134.   If a loan is "void or unenforceable," then "a person may not: (i) [c]ollect or attempt to collect, directly or indirectly, any amount from the borrower; (ii) [e]nforce or attempt to enforce the contract against any property securing the loan; or (iii) [s]ell, assign, or otherwise transfer the loan to another person." Md. Code, Commercial Law § 12-114.1(d)(4).

135.   At all times relevant hereto, Defendants were "unlicensed persons" within the meaning of Maryland's Usury Statute.

136. Defendants have thus violated Maryland's Usury Statute with respect to their dealings with Plaintiff and members of the Putative Class by making covered loans while unlicensed.

137. Defendants' loans to Plaintiffs and members of the Putative Class are therefore void and unenforceable.

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby request a declaratory judgment that: (a) the subject loans were made in violation of Md. Code, Commercial Law § 12-114.1; (b) the subject loans are void and unenforceable pursuant to Commercial Law § 12-114.1(d)(2); (c) Defendants are enjoined from collecting or attempting to collect on the subject loans, in accordance with Md. Code, Commercial Law § 12-114.1(d)(4)(i); (d) Defendants are enjoined from enforcing or attempting to enforce the subject contracts against any property securing the subject loans, in accordance with Md. Code, Commercial Law § 12-114.1(d)(4)(ii); and (e) all past payments (whether principal, interest, charges, fees, or other compensation) made by Plaintiffs and members of the Putative Class, constituted unjust enrichment for which Plaintiffs and the Putative Class are entitled to restitution from Defendants, as pleaded in Count VII, below.

### Count IV: Violation of Maryland Consumer Loan Law
### (Usurious Lending —— Declaratory Judgment/Injunctive Relief)
### (Plaintiff v. All Defendants)

138. Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully realleged herein, and further allege as follows:

139.    The Maryland Consumer Loan Law ("MCLL"), codified at Md. Code,

Commercial Law § 12-301, *et seq.*, provides a private cause of action.[9]

140.    The MCLL applies to small consumer loans—that is, loans "made for

personal, family, or household purposes" and "in an original amount or value which does

not exceed $25,000.00." Md. Code, Commercial Law § 12-303(a)–(b).

141.    The MCLL prohibits usurious lending. Specifically, the law prohibits

lenders from making consumer loans to Maryland residents in excess of 24% or 33%

APR, depending on the size of the loan. *See* Maryland Code, Commercial Law §§ 12-

306(a)–(b)[10] and 12-314(a)[11].

142.    The MCLL provides that "[a] loan made in the amount of $25,000.00 or

less, regardless of whether the loan is or purports to be made under this subtitle, is void

and unenforceable if . . . a person contracts for a loan that has a rate of interest, charge,

discount, or other consideration greater than that authorized under State law." Md.

Code, Commercial Law § 12-314(b)(1)(i)(1).

143.    The MCLL also provides that "*any profit or advantage* which a person

contracts for, collects, receives, or obtains by a collateral sale, purchase, or agreement

---

[9]  *See, e.g., Price v. Murdy*, 462 Md. 145, 198 A.3d 798 (2018); *Kemp v. Nationstar Mortgage Association*, 248 Md. App. 1, 43, 239 A.3d 798, 823 n.7 (2020).

[10]  Md. Code, Commercial Law § 12-306(a)(6) provides that ". . . a lender . . . may charge interest not exceeding the following rates: (i) For any loan with an original principal balance of $2,000 or less, 2.75 percent interest per month [33% APR] on that part of the unpaid principal balance not more than $1,000 and 2 percent interest per month [24% APR] on that part of the unpaid principal balance that is more than $1,000; (ii) For any loan with an original principal balance of more than $2,000, the maximum rate of interest is 2 percent per month [24% APR] on the unpaid principal balance of the loan." Additionally, Md. Code, Commercial Law § 12-306(b) provides that "[i]f any principal balance remains unpaid 6 months after the loan matures as originally scheduled or deferred, the lender may not contract for, charge, or receive interest at a rate exceeding 6 percent simple interest per annum on the actual unpaid principal balances from time to time."

[11]  Md Code, Commercial Law § 12-314(a) provides that: "A person may not lend $25,000.00 or less if: (i) The person directly or indirectly contracts for, charges, or receives a greater rate of interest, charge, discount, or other consideration than that authorized by the laws of this State."

27

in connection with negotiating, *arranging*, or making a loan is considered a charge for the loan." Md. Code, Commercial Law § 12-310(a) (emphasis added).

144.   The MCLL further provides: "Pretended purchase of . . . services considered a loan . . . This subtitle applies but is not limited to a lender who: . . . [b]y any device or pretense of charging for his services or otherwise, seeks to obtain any interest, charges, discounts, or like consideration." Md. Code, Commercial Law § 12-303(d)(2).

145.   Indeed, a knowing violation of the MCLL is a crime. *See* Md. Code, Commercial Law § 12-316.

146.   As previously set forth above, Defendant OMNI has repeatedly and knowingly contracted for, charged, demanded, collected, and/or accepted rates of interest *far* in excess of Maryland's interest-rate caps.

147.   Defendants Radiology Providers provided Plaintiffs with the Medical Lien and/or informed Plaintiffs orally, prior to Plaintiffs signing the Medical Lien, that the effect of the agreement was simply to delay payment for their medical procedure until after the settlement of their personal injury claim.

148.   Defendants Radiology Providers, in exchange for arranging said loans (by directing Plaintiffs (potential lendees) to Defendant OMNI and inducing Plaintiffs to sign the Medical Lien), have profited in the form of balance billing, kickbacks, and/or other remunerative arrangements.

149.   Accordingly, it is unlawful for Defendants to collect or receive any principal, interest, or charges on the loans, including all amounts that Defendants now demand of

28

Plaintiffs, and all amounts they now demand or have previously collected from members of the proposed Plaintiff class.

## Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby request a declaratory judgment that: (a) the subject loans were made in violation of Md. Code, Commercial Law §§ 12-306 and 12-314; (b) the subject loans are void and unenforceable pursuant to Md. Code, Commercial Law § 12-314(b)(1)(i)(1); (c) Defendants are enjoined from collecting or attempting to collect on the subject loans, in accordance with Md. Code, Commercial Law § 12-314(d)(1); (d) Defendants are enjoined from enforcing or attempting to enforce the subject contracts against any property securing the subject loans, in accordance with Md. Code, Commercial Law § 12-314(d)(ii); and (e) all past payments (whether principal, interest, charges, fees, or other compensation) made by Plaintiffs and members of the Putative Class, constituted unjust enrichment for which Plaintiffs and the Putative Class are entitled to restitution from Defendants, as pleaded in Count VII, below.

## Count V: Violation of Maryland Consumer Loan Law
## (Licensing Requirements — Declaratory Judgment/Injunctive Relief)
### (Plaintiff v. All Defendants)

150. Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully realleged herein, and further allege as follows:

151. Private causes of action brought under the Maryland Consumer Loan Law ("MCLL"), codified at Md. Code, Commercial Law § 12-301, *et seq.*, for failure to comply with the MCLL's licensing requirements, constitute an "other specialty" within the

meaning of Md. Code, Courts & Judicial Proceedings § 5-102(a)(6) and are thus subject

to a 12-year statute of limitations. *Price v. Murdy*, 462 Md. 145, 198 A.3d 798 (2018).

152.   No person may make loans under the MCLL unless either licensed by the

Maryland Commissioner of Financial Regulation or exempt from said licensing

requirements.  Md. Code, Commercial Law §§ 12-302; Md. Code, Financial Institutions

§ 11-204(a).[12]

153.   The MCLL provides that "[a] loan made in the amount of $25,000.00 or

less, regardless of whether the loan is or purports to be made under this subtitle, is *void*

*and unenforceable* if . . . [a] person who is not licensed under or exempt from the

licensing requirements . . . made the loan." Md. Code, Commercial Law § 12-

314(b)(1)(i)(3).  (Emphasis added.)

154.   A lender's failure to comply with the MCLL's licensing requirements

renders a loan void and unenforceable even if the lender is domiciled out of state,

provided that the loan is made "to a borrower who is a [Maryland resident]" and "the

[loan application] originated in [Maryland]." Md. Code, Commercial Law § 12-314(c)(3).

155.   At all times relevant hereto, Defendants were neither licensed[13] in

compliance with the MCLL nor exempt from the MCLL's licensing requirements.

---

[12]  Md. Code, Commercial Law § 12-302 provides: "A person may not engage in the business of making loans under thus subtitle unless the person is licensed under or is exempt from the licensing requirements of Title 11, Subtitle 2 of the Financial Institutions Article, the Maryland Consumer Loan Law——Licensing Provisions." *See also*, § 12-314(a)(3).

   Md. Code, Financial Institutions § 11-204(a) provides that: "*In general.* – A person may not: (1) Receive any application for a loan or allow any note or contract for a loan to be signed at any place of business for which the person does not have a license; (2) Conduct any business under the Maryland Consumer Loan Law under a name different from the name that appears on the person's license; or (3) Evade the application of this section by any device, subterfuge, or pretense of any kind."

[13]  *See* "Nationwide Multistate Licensing System ("NMLS") Consumer Access portal: https://www.nmlsconsumeraccess.org/Home.aspx/MainSearch

30

156.    Defendants thus violated the MCLL with respect to loans made to Plaintiff and members of the Putative Class.

157.    Defendants' loans to Plaintiffs and members of the Putative Class are therefore void and unenforceable.

158.    Accordingly, Defendants "may not receive or retain any principal, interest, fees, or other compensation" with respect to the subject loans.  Md. Code, Commercial Law § 12-314(b)(2).

### Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby request a declaratory judgment that: (a) the subject loans were made in violation of Md. Code, Commercial Law §§ 12-302 and 12-314(a)(3); (b) the subject loans are void and unenforceable pursuant to Md. Code, Commercial Law § 12-314(b)(1)(i)(3); (c) Defendants are enjoined from collecting or attempting to collect on the subject loans, in accordance with Md. Code, Commercial Law § 12-314(d)(1); (d) Defendants are enjoined from enforcing or attempting to enforce the subject contracts against any property securing the subject loans, in accordance with Md. Code, Commercial Law § 12-314(d)(ii); and (e) all past payments (whether principal, interest, charges, fees, or other compensation) made by Plaintiffs and members of the Putative Class, constituted unjust enrichment for which Plaintiffs and the Putative Class are entitled to restitution from Defendants, as pleaded in Count VII, below.

31

**_Count VI: Violations of Maryland Consumer Protection Act ("MCPA")_**
**(Unfair, Abusive, and Deceptive Trade Practices — Compensatory Damages)**
**(Plaintiff v. All Defendants)**

159.   Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully realleged herein, and further allege as follows:

160.   The Maryland Consumer Protection Act ("MCPA"), codified at Md. Code, Commercial Law § 13-101, *et seq.*, is intended to protect "consumers" through its prohibition of "unfair, abusive, and deceptive trade practices."

161.   Plaintiffs are empowered to bring this action pursuant to § 13-408 of the MCPA, which provides that: "any person may bring an action to recover for injury or loss sustained by him as a result of a practice prohibited by [the MCPA]."

162.   The MCPA "shall be construed and applied liberally to promote its purpose." Md. Code, Commercial Law § 13-105.

163.   At all times relevant hereto, Plaintiffs were "consumers" as defined under the MCPA at § 13-101(c).

164.   At all times relevant hereto, Defendants were "merchants" as defined under the MCPA at § 13-101(g), who engaged in one or more of the following acts covered by the MCPA:

a) "The sale . . . of . . . consumer services;"

b) "The offer for sale . . . of . . . consumer services;"

c) "The extension of consumer credit;" and/or

d) "The collection of consumer debts."

Md. Code, Commercial Law § 13-303.

165.   Defendants repeatedly violated the MCPA, through various act and/or omissions, including, but not limited to, the following:

a)   making "[f]alse . . . or misleading oral or written statement[s] . . . or other representation[s] of any kind which ha[d] the capacity, tendency, or effect of deceiving or misleading consumers," in violation of § 13-301(1) of the MCPA;

b)   "[f]ail[ing] to state a material fact [where said] failure deceive[d] or tend[ed] to deceive" consumers, in violation of § 13-301(3) of the MCPA; and

c)   engaging in "[d]eception, fraud, false premise, misrepresentation, or knowing concealment, suppression, or omission of [a] material fact with the intent that [consumers would] rely on the same in connection with . . . [t]he promotion or sale of . . . [the] consumer service," in violation of § 13-301(9) of the MCPA.

166.   Prior to Plaintiffs signing the "Medical Lien" with Defendants, neither Plaintiffs nor their lawyers were informed of the stark disparity between the actual amount billed by Defendants Radiology Providers and the lien amount claimed by Defendant OMNI.

167.   Defendants intentionally and fraudulently withheld this information from Plaintiffs and Plaintiffs' attorneys.

168.   First, the language of the Medical Lien did not specify the "principal amount" (i.e., the actual amount billed for the medical procedure), despite Defendants'

obligation to disclose it under Maryland's Usury Statute, the MCLL, and the federal Truth in Lending Act ("TILA").[14]

169.  Second, the language of the Medical Lien did not specify an interest rate, despite Defendants' obligation to disclose it under Maryland's Usury Statute, the MCLL, and TILA.

170.  Third, the Medical Lien ultimately signed by Plaintiffs' lawyers did not include a specific price term, but rather stated that Plaintiffs had agreed to pay back the "agreed amount" upon resolution of Plaintiffs' personal injury claim.

171.  Fourth, the language of the Medical Lien elsewhere provided that Plaintiffs' lawyers agreed to "satisf[y]" Defendant OMNI's *"medical bill/lien"*. This language was *intentionally designed to misrepresent and conceal* the usurious nature of the agreement, by suggesting to Plaintiffs' attorneys that the medical bill and claimed lien were the same amount.

172.  Fifth, Defendants Radiology Providers provided Plaintiffs with the Medical Lien and informed Plaintiffs orally, prior to Plaintiffs signing the Medical Lien, that the effect of the agreement was simply to delay payment for their medical procedure until after the settlement of their personal injury claim.

173.  Plaintiffs justifiably relied upon Defendants' misrepresentations and were deceived by said misrepresentations.

174.  As a result of Defendants' violations of the MCPA, Plaintiffs and members of Putative Class have suffered losses.

---

[14]  15 U.S.C. § 1601, *et seq.*

34

## Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby demand judgment against Defendants, jointly and severally, for: (a) compensatory damages in an amount *in excess of* SEVENTY-FIVE THOUSAND AND 00/100 U.S. DOLLARS ($75,000.00); (b) recovery of costs; (c) award of reasonable attorney's fees pursuant to Md. Code, Commercial Law § 13-408(b); (d) interest; and (e) such further relief as this Court deems necessary and appropriate.

### Count VII: Unjust Enrichment
### (Plaintiff v. All Defendants)

175.   Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully realleged herein, and further allege as follows:

176.   To the detriment of Plaintiffs and members of the Putative Class, Defendants have been, and continue to be, unjustly enriched through their practice of contracting for, charging, demanding, and accepting usurious rates of interest from Plaintiffs and the members of the Putative Class, in violation of Maryland law.

177.   At all times relevant hereto, Defendants had knowledge of the benefits conferred upon them through their illegal practices.

178.   As between the parties, it would be unjust and inequitable for Defendants to retain the benefits obtained through their usurious, predatory, and illegal practices.

179.   Accordingly, Plaintiffs, on behalf of themselves and members of the Putative Class, seek a full accounting and restitution of all benefits conferred upon Defendants as a result of their unlawful conduct as alleged herein.

35

## Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative

Class, hereby demand judgment against Defendants, jointly and severally, for: (a)

restitution in an amount *in excess of* SEVENTY-FIVE THOUSAND AND 00/100 U.S.

DOLLARS ($75,000.00); (b) recovery of costs; (c) interest; and (d) such further relief as

this Court deems necessary and appropriate.

## Count VIII: Intentional Misrepresentation
### (Fraud/Deceit/Concealment/Non-Disclosure — Compensatory Damages)
### (Plaintiff v. All Defendants)

180.    Plaintiffs incorporate by reference the preceding paragraphs, in the same

force and effect as if fully realleged herein, and further allege as follows:

181.    "The tort of fraudulent inducement 'means that one has been led by

another's guile, surreptitiousness, or other form of deceit to enter into an agreement to

his detriment.'" *Rozen v. Greenberg*, 165 Md. App. 665, 674–675, 886 A.2d 924, 929–

930 (2005).

182.    Defendants made false representations of material fact to Plaintiffs with

respect to the terms of the loan agreements.

183.    Defendants either knew that the representations were false or made the

representations with such reckless disregard for the truth that knowledge of their falsity

can be imputed.

184.    Defendants failed to disclose material facts concerning the nature of the

loans notwithstanding their duty under existing Maryland law to do so.

185.    Defendants' non-disclosures were intentional and designed to deceive

Plaintiffs.

36

186. First, the Medical Lien did not specify the "principal amount" (i.e., the actual amount billed for the medical procedure), despite Defendants' obligation to disclose it under Maryland's Usury Statute, the MCLL, and TILA.

187. Second, the Medical Lien did not specify an interest rate, despite Defendants' obligation to disclose it under Maryland's Usury Statute, the MCLL, and TILA.

188. Third, the Medical Lien ultimately signed by Plaintiffs' lawyers did not include a specific price term, but rather stated that Plaintiffs had agreed to pay back the "agreed amount" upon resolution of Plaintiffs' personal injury claim.

189. Fourth, the language of the Medical Lien elsewhere provided that Plaintiffs' lawyers agreed to "satisf[y]" Defendant OMNI's *"medical bill/lien"*—language *intentionally designed to misrepresent and conceal* the usurious nature of the agreement, by suggesting to Plaintiffs' attorneys that the medical bill and claimed lien were the same amount.

190. Fifth, Defendants Radiology Providers provided Plaintiffs with the Medical Lien and informed Plaintiffs orally, prior to Plaintiffs signing the Medical Lien, that the effect of the agreement was simply to delay payment for their medical procedure until after the settlement of their personal injury claim.

191. Plaintiffs justifiably relied upon Defendants' misrepresentations, fraud, deceit, concealment, and non-disclosures.

192. Plaintiffs and members of the Putative Class have suffered damages as a direct result of said reliance.

## Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative

Class, hereby demand judgment against Defendants, jointly and severally, for: (a)

compensatory damages in an amount *in excess of* SEVENTY-FIVE THOUSAND AND

00/100 U.S. DOLLARS ($75,000.00); (b) recovery of costs; (c) interest; and (d) such

further relief as this Court deems necessary and appropriate.

### Count IX: Misrepresentation
### (Constructive Fraud — Compensatory/Punitive Damages)
### (Plaintiff v. All Defendants)

193.   Plaintiffs incorporate by reference the preceding paragraphs, in the same

force and effect as if fully realleged herein, and further allege as follows:

194.   At all times relevant hereto, Defendants had a legal and/or equitable duty

to Plaintiffs.

195.   Defendants breached that duty through conduct (multiple acts and

omissions) that were designed to deceive Plaintiffs, violated Plaintiffs' confidences, and

injured the public interest:

> a) Defendants drafted the language of the Medical Lien so as to
> not specify the "principal amount" (i.e., the actual amount billed
> for medical procedure), despite Defendants' legal obligation to
> disclose it under Maryland's Usury Statute, the MCLL, and TILA;
>
> b) Defendants drafted the language of the Medical Lien so as not
> specify an interest rate, despite Defendants' obligation to
> disclose it under Maryland's Usury Statute, the MCLL, and TILA.

38

c) Defendants drafted the language of the Medical Lien so as not to include a specific price term (total payback amount), but rather to state that Plaintiffs had agreed to pay back the "agreed amount" upon resolution of Plaintiffs' personal injury claim.

d) Defendants drafted the language of the Medical Lien so as to deceive Plaintiffs by stating that Plaintiffs' lawyers agreed to "satisfy" Defendant OMNI's *"medical bill/lien"*—language *designed to misrepresent and conceal* the usurious nature of the agreement, by suggesting to Plaintiffs' attorneys that the medical bill and claimed lien were the same amount.

e) Defendants Radiology Providers provided Plaintiffs with the Medical Lien and informed Plaintiffs orally, prior to Plaintiffs signing the Medical Lien, that the effect of the agreement was simply to delay payment for their medical procedure until after the settlement of their personal injury claim.

196.   Plaintiffs, and members of the Putative Class, suffered damages as a direct result of said Defendants' misrepresentations, including, but not limited to, overpayment of the actual costs of medical procedures and/or delayed disbursal of their personal injury settlements and/or judgment.

## *Prayer for Relief*

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby demand judgment against Defendants, jointly and severally, for: (a) compensatory damages in an amount *in excess of* SEVENTY-FIVE THOUSAND AND

00/100 U.S. DOLLARS ($75,000.00); (b) punitive damages; (c) recovery of costs; (d) recovery of reasonable attorney's fees; (e) interest; and (f) such further relief as this Court deems necessary and appropriate.

### Count X: Civil Conspiracy
### (Plaintiff v. All Defendants)

197.   Plaintiffs incorporate by reference the preceding paragraphs, in the same force and effect as if fully realleged herein, and further allege as follows:

198.   At all times relevant hereto, Defendants confederated, either by agreement or understanding, to perform the above-pleaded tortious and/or unlawful acts, in order to profit from said acts.

199.   Defendant OMNI has repeatedly and knowingly contracted for, charged, demanded, collected, and/or accepted rates of interest *far* in excess of Maryland's interest-rate caps.

200.   Defendants Radiology Providers provided Plaintiffs with the Medical Lien and/or informed Plaintiffs orally, prior to Plaintiffs signing the Medical Lien, that the effect of the agreement was simply to delay payment for their medical procedure until after the settlement of their personal injury claim.

201.   Defendants Radiology Providers, in exchange for arranging said loans (by directing Plaintiffs (potential lendees) to Defendant OMNI and inducing Plaintiffs to sign the Medical Lien), have profited in the form of balance billing, kickbacks, and/or other remunerative arrangements.

202.   As a direct and proximate result of the Defendants' conspiracy, and their performance of the above-pleaded tortious and/or unlawful acts, Plaintiffs and members of the Putative Class have suffered damages, including, but not limited to, overpayment

40

of the actual costs of medical procedures, repayment of usurious rates of interest, and/or delayed disbursal of their personal injury settlements and/or judgment.

203.    Accordingly, Plaintiffs and members of the Putative Class seeks compensatory and punitive damages from Defendants.

<i>Prayer for Relief</i>

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Putative Class, hereby demand judgment against Defendants, jointly and severally, for: (a) compensatory damages in an amount *in excess of* SEVENTY-FIVE THOUSAND AND 00/100 U.S. DOLLARS ($75,000.00); (b) punitive damages; (c) recovery of costs; (d) recovery of reasonable attorney's fees; (e) interest; and (f) such further relief as this Court deems necessary and appropriate.

Respectfully submitted,

GREENBERG & BEDERMAN, LLC

Jason W. Fernandez (CPF # 0712110242)
Christopher D. Salsman (CPF # 1512160234)
1111 Bonifant Street
Silver Spring, Maryland 20910
Tel: (301) 589-2200 / Fax: (301) 589-6706
JFernandez@GBLawyers.com
CSalsman@GBLawyers.com
*Attorneys for Plaintiffs*

**JURY PRAYER**

Plaintiff hereby prays a jury trial as to all claims alleged herein.

Christopher D. Salsman, Esq.

41