IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| SEAN D. PALMER, *et al.* | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: GJH-22-0792 |
| RADNET, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Sean D. Palmer, Alexis Zabsonre, and Danilo Vasquez-Perez bring this civil action against Defendants RadNet, Inc., RadNet Managed Imaging Services, Inc., RadNet Sub, Inc., RadNet Management, Inc., RadNet Management I, Inc., RadNet Management II, Inc., Community Radiology Associates, Inc., Community Imaging Partners, Inc., and OMNI Healthcare Financial, LLC (d/b/a Global Financial Credit, LLC),[1] (collectively, "Defendants") for violations of Maryland Usury Statute, Md. Code, Commercial Law § 12-101, *et seq.*, (Count I, II, and III), and violations of Maryland Consumer Loan Law ("MCLL"), Md. Code, Commercial Law § 12-301, *et seq.*, (Count IV and V), violations of Maryland Consumer Protection Act ("MCPA"), Md. Code, Commercial Law § 13-101, *et seq.*, (Count VI), Unjust Enrichment (Count VII), Intentional Misrepresentation (Count VIII), Misrepresentation (Count IX), and Civil Conspiracy (Count X). ECF No. 4. Pending before the Court is Defendants'

---

[1] Plaintiffs have since voluntarily dismissed, without prejudice, its claims against RadNet, Inc., RadNet Managed Imaging Services, Inc., RadNet Sub, Inc., RadNet Management, Inc., RadNet Management I, Inc., and RadNet Management II, Inc. ECF No. 12.

1

Motion to Compel Arbitration and Dismiss Complaint. ECF No. 13.[2] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' motion is granted.

## I.     BACKGROUND

Plaintiff Palmer is a current resident of Florida, and at the time he entered into the loan agreements at issue in this lawsuit, he was a resident of Maryland. ECF No. 4 ¶ 1. Both Plaintiffs Zabsonre and Vasquez-Perez are residents of Maryland. *Id.* ¶¶ 2–3. Defendant Community Radiology Associates ("CRA") is a Maryland corporation headquartered in Maryland. *Id.* ¶ 6. Defendant Community Imaging Partners, Inc. ("CIP") is a Delaware corporation headquartered in Maryland. *Id.* ¶ 7. Defendant OMNI Healthcare Financial, LLC ("OMNI") is a Delaware corporation headquartered in North Carolina. *Id.* ¶ 8. All Defendants regularly conduct business in Maryland. *Id.* ¶¶ 6–8. Defendants CRA and CIP are divisions or wholly owned subsidiaries of Defendants RadNet and RadNet Management, and Defendant OMNI is a finance company that provides medical lien management services for indigent persons who typically do not have health insurance. *Id.* ¶¶ 22–23.

### A.   Plaintiff Palmer

Plaintiff Palmer was involved in a motor vehicle collision on April 15, 2018, where he suffered multiple injuries including injuries to his left hip. Palmer's attorneys, the same attorneys representing the Plaintiffs herein, represented Palmer in connection with that collision. Palmer was examined by a doctor and was told to get a CT scan of his left hip. The CT scan was scheduled for May 2, 2018, at Clinton Imaging Center, a medical diagnostic imaging center

---

[2] Also pending before the Court is Plaintiffs' Motion for Class Certification, ECF No. 3, and Plaintiffs' Motion for Leave to File Surreply, ECF No. 19, both of which are denied, and Defendants' Consent Motion for Leave to File Response Nunc Pro Tunc, ECF No. 20, which is moot in light of the Court denying Plaintiffs' Motion No. 19.

2

owned and operated by the Defendant Radiology Providers. ECF No. 4 at 10. [3] Palmer's attorneys received a fax from MedChex, now Defendant OMNI, which states that "the above-mentioned patient [Plaintiff Palmer] would like to be admitted for an MRI or other diagnostic testing. In order to approve your client on a lien basis please sign the attached Letter of Protection and complete the questions below." *Id.* ¶ 42. Attached to the fax cover page was a Universal Letter of Protection ("LOP") drafted by MedChex, which stated:

> Please be advised that our firm represents personal injury and/or workers' compensation clients that require medical services. This letter shall serve as notice that we will protect your medical bill as they [sic] relate to our client's legal claims by remitting payment from the settlement proceeds.
>
> We require that you contact our office prior to providing medical services to our clients so that we may determine if your medical services would relate to the client's claim. If we determine that your services do relate to the client's legal claim, then this letter will apply to the related bills only. We also require that you promptly provide medical reports and bills for services rendered.
>
> Upon settlement and distribution of proceeds from the legal claim relating to MedChex's bill, I will contact MedChex to satisfy the lien. If I no longer represent the client/patient than [sic] I will provide any and all applicable insurance carrier and/or subsequent attorney information to a MedChex representative without delay. This Universal Letter of Protection must be renewed annually.

*Id.* at 11. Palmer's attorney never returned a signed copy of the LOP to MedChex. *Id.* ¶ 45. Also included in the fax was a Medical Lien/Letter of Protection ("Medical Lien"), which was similarly drafted by MedChex. *Id.* ¶ 46. The Medical Lien provided that:

> I, Sean Palmer, authorize and direct the below named attorney to pay MedChex the agreed amount out of my/our share of any collection made on our behalf against any party liable for the injuries requiring medical treatment by Clinton imaging Center. Should the below named attorney not agree to signing this letter of protection, MedChex may revoke this letter of protection by providing written notice to both the attorney and patient and MedChex may then actively pursue collection of the account or accounts in its normal manner. I hereby authorize and direct my attorney to cooperate with MedChex when/if they

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

> inquire concerning the status of any claim or suit on my/our behalf, and such advice shall be for my account and without charge or cost to MedChex.
>
> Dear Simba Hodari,
>
> Your client referenced above has been or will be seen at Clinton Imaging Center for diagnostic testing related to injuries sustained in a personal injury accident. It is our understanding that you represent this patient in a personal injury claim and that our medical bill/lien will be satisfied if there is successful resolution to the claim. Upon settlement or verdict and distribution of proceeds from the claim, please mail payment to the MedChex billing center below.
>
> I, Simba Hodari, acknowledge this medical lien on the legal claim proceeds of the above mentioned [sic] patient. Upon settlement and distribution of proceeds from the legal claim, I will contact MedChex to satisfy the lien. If I no longer represent the patient/client, I will provide any and all applicable insurance carrier and/or subsequent attorney information to a MedChex representative so they may assert their lien on the claim.

*Id.* at 12. Neither the LOP nor the Medical Lien specified the amount of the original medical bill. *Id.* at 11–12.

On September 24, 2018, Palmer's attorneys received a medical bill from Defendant CRA showing a $350 charge for the May 2, 2018, CT scan. The bill included a payment information section which provided "Insurance Payment (92114 – MedChex LLC)." *Id.* ¶ 49. On September 27, 2018, Palmer's attorneys received a Health Insurance Claim Form indicating a balance due to MedChex of $1,695 for the CT scan. *Id.* ¶ 50. Believing there was a mistake, Palmer's attorneys called MedChex to confirm the balance due, and MedChex advised that there was no mistake, and the balance due was correct. *Id.* ¶¶ 53–54.

### B. Plaintiff Zabsonre

Plaintiff Zabsonre was involved in a motor vehicle collision on April 3, 2018, where he suffered multiple injuries, including injuries to his lower back. Plaintiffs' attorneys in the lawsuit herein also represented Zabsonre in connection with that collision. *Id.* ¶¶ 56–58. On June 13, 2018, Plaintiff was examined by a doctor and referred to get a lumbar MRI. The MRI was

scheduled for June 21, 2018, at Frederick Imaging Center, a medical diagnostic imaging center owned and operated by Defendant Radiology Providers. *Id.* ¶¶ 59–60. On June 18, 2018, Zabsonre's attorneys received a fax from Defendant OMNI that was the same in all material aspects to the fax that was sent to the attorneys in connection with their representation of Plaintiff Palmer. *Id.* ¶¶ 61–63. Mr. Zabsonre's attorney signed the medical lien. *Id.* ¶ 64.

On June 21, 2018, Zabsonre had his MRI. Later that year his attorneys received a Health Insurance Claim Form indicating a balance due to MedChex of $1,895 for the MRI. *Id.* ¶¶ 66–67.

On January 31, 2019, Plaintiff Zabsonre filed a personal injury action in the Circuit Court for Frederick County, Maryland, in connection with the April 2018 motor vehicle collision. *Id.* ¶ 70. In that action, Zabsonre's attorneys subpoenaed non-party CRA to get information on their "flagrantly abusive" billing/lending practices. CRA never fully responded to the subpoena. After a status hearing, and identifying CRA's parent company, Plaintiff issued a subpoena on RadNet, Inc., CRA's parent company. *Id.* at 16–18. Plaintiff states that after 18 months of litigation, neither CRA nor RadNet complied with the subpoena or produced any responsive documents. *Id.* at 19–20.

C.  **Plaintiff Vasquez**

Plaintiff Vasquez was involved in a motor vehicle collision on May 3, 2019, where he suffered multiple injuries, including but not limited to injuries to his head. Plaintiffs' attorneys in this matter are the same attorneys who represented Vasquez in connection with that collision. *Id.* ¶¶ 101–103. On June 14, 2019, a doctor examined Vasquez and referred him for an MRI. The MRI was scheduled for June 18, 2019, at a medical diagnostic imaging center owned and operated by Defendant Radiology Providers. *Id.* ¶¶ 104–105. Plaintiff Vasquez and his attorney

signed a Medical Lien similar to the ones rendered to Plaintiffs Palmer and Zabsonre. *Id.* ¶ 106. Plaintiff Vasquez's attorneys subsequently received a Health Insurance Claim Form indicating a balance due to MedChex of $1,895 for the MRI. *Id.* ¶ 109.

Plaintiffs are aware of at least one other individual who has "fell victim to the Defendants' scheme." *Id.* ¶ 111.

Plaintiffs seeks to file this claim on behalf of all others similarly situated with the following proposed class definition:

> All Maryland residents who entered into loan agreements (Letters of Protection, Medical Liens, or similar loan agreements of whatever title) with Global Financial Credit, LLC (d/b/a MedChex) and/or OMNI Healthcare Financial, LLC in connection with the payment of medical treatment or procedures from 02/11/2010 — Present.

*Id.* ¶ 17.

## II.   STANDARD OF REVIEW

A court may compel arbitration under the Federal Arbitration Act ("FAA") if the parties agreed in writing to arbitrate the dispute. *Adkins v. Labor Ready. Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002); *see also* 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The FAA reflects the strong federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). But "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501.

Where the parties dispute the validity of an arbitration agreement, "[m]otions to compel arbitration ... are treated as motions for summary judgment." *Rose v. New Day Fin., LLC*, 816 F.

Supp. 2d 245, 251 (D. Md. 2011). Therefore, such motions "shall [be] grant[ed] ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, the Court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

### III.   DISCUSSION

Defendants argue that Plaintiffs should be compelled to arbitration because all the Plaintiffs in this case signed a contract with OMNI agreeing to arbitrate disputes of any kind. ECF No. 13-1 at 2. The Federal Arbitration Act requires a district court to stay judicial proceedings and compel arbitration of any issues covered by an arbitration agreement. 9 U.S.C. § 3. "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (emphasis in original). *See Jones v. Prosper Marketplace, Inc.*, No. GJH-21-1126, 2022 WL 834210, at *9 (D. Md. Mar. 21, 2022). Pursuant to the FAA, a party

opposing arbitration may challenge the validity of an arbitration provision "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiffs assert that the motion to compel arbitration should be denied because (1) the parties did not enter into a valid and enforceable arbitration agreement, and (2) the arbitration agreement does not encompass the claims raised in the complaint. ECF No. 16 at 1. The Court addresses each argument in turn.

### A. Enforceability

Plaintiffs assert that the arbitration agreement is unenforceable because they were fraudulently induced and the agreement is unconscionable. ECF No. 16 at 7–11. Challenges "to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types. One type challenges specifically the validity of the agreement to arbitrate." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* Plaintiffs' claims challenge the validity of the contract as a whole. Plaintiffs state that Defendants made false representations regarding the Medical Lien, and they knew that such representations were false. They further stated that Defendants failed to disclose material facts concerning the nature of the loans and their non-disclosure was intentional and designed to deceive Plaintiffs. Specifically, Plaintiffs state that "the Medical Lien did not specify the principal amount despite the obligation to disclose it, the Medical Lien did not specify an interest rate, and the language of the Medical Lien was designed to misrepresent and conceal the usurious nature." ECF No. 16 at 8–9. The Supreme Court has held that the statutory language of the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Buckeye*

*Check Cashing*, 546 U.S. at 445 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04 (1967)). "Unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46. Because Plaintiffs' challenge to the arbitration agreement rests on the purported misrepresentations made concerning the entire contract, the issue of the agreement's validity must be considered by the arbitrator in the first instance. *See id.* at 449. ("regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). *See also Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 636 (4th Cir. 2022) ("the law is well settled in this circuit that, if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity or enforceability of an arbitration provision … the grounds must relate specifically to the arbitration clause and not just to the contract as a whole."). *See also Prosper Marketplace, Inc*., "[W]here no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." 2022 WL 834210, at *18 (quoting *Prima Paint Corp.,* 388 U.S. at 403–04). "[T]he doctrine of severability presumes an underlying, existent, agreement. Such an agreement exists, under the Prima Paint doctrine, even if one of the parties seeks to rescind it on the basis of fraud in the inducement." *Id.* (citation omitted). Plaintiffs will thus be required to submit their claims to arbitration. Plaintiffs next argue that the Arbitration agreement does not apply to the dispute at issue.

### B. Application of the Arbitration Agreement

Plaintiffs assert that the arbitration agreement does not apply to the dispute at issue because the claims alleged in this lawsuit have nothing to do with the *procedures* funded or

performed by Defendants. ECF No. 16 at 12 (emphasis added). The Medical Lien contractual provision at issue states:

> Patient further agrees that if a **dispute of any kind arises related to the procedures** funded by MedChex, either MedChex or Patient may elect to have the dispute resolved by binding arbitration under the auspices of the American Arbitration Association ("AAA") such that an enforceable resolution will be determined by one or more neutral arbitrators in lieu of civil court…

ECF No. 13-2 (emphasis added). Under Maryland law,[4] "a court examining 'whether an arbitration agreement is a valid contract' is limited to 'the language of the arbitration agreement itself.'" *Prosper Marketplace, Inc.*, 2022 WL 834210, at *12 (citation omitted). "Contract terms are interpreted by considering the 'customary, ordinary, and accepted meaning of the language used.'" *Id.* (citation omitted). "Under the objective interpretation principle, where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court." *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251 (2001).

The dispute at issue is encompassed by the arbitration agreement. Plaintiffs allege multiple claims of usurious lending, misrepresentation, and fraud, all of which arise out of the *procedures* that were performed or funded by defendants. Therefore, it cannot be said that Plaintiffs claims do not "relate to" the procedures at issue here as Plaintiffs claim. "The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed." *Chevy Chase Bank*, 363 Md. at 251. Had Plaintiffs not had the procedures at issue, they would have no claim against Defendants. Accordingly, Plaintiffs claims are encompassed by the arbitration agreement, and they will be required to arbitrate their claims.

IV.     **CONCLUSION**

---

[4] The parties do not dispute that Maryland law is the applicable law to apply to the dispute at issue.

For the foregoing reasons, Defendants' Motion is granted, and this proceeding will be stayed. A separate Order follows.


Date: <u>February 20, 2023</u>                                         ___/s/_____
                                                                      GEORGE J. HAZEL
                                                                      United States District Judge